UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| TAMARA MARIE SALISBURY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:19-cv-1198-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Tamara Marie Salisbury ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the Act). *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 12).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 8, 10. Plaintiff also filed a reply. *See* ECF No. 11. For the reasons set forth below, Plaintiff's motion (ECF No. 8) is **DENIED,** and the Commissioner's motion (ECF No. 10) is **GRANTED.**

## <u>BACKGROUND</u>

Plaintiff protectively filed her DIB application on December 28, 2015, alleging disability beginning September 15, 2013 (the disability onset date). Transcript ("Tr.") 20, 161-67. Plaintiff alleged disability due to anxiety, depression, panic attacks, and arthritis. Tr. 20, 161, 186. Plaintiff's application was denied initially on May 20, 2016 (Tr. 84-100), after which she requested an administrative hearing (Tr. 103-104). On June 5, 2018, a hearing was held in Buffalo, New

York, before Administrative Law Judge Mary Mattimore (the "ALJ"). Tr. 20, 37. Plaintiff appeared and testified at the hearing and was represented by Kimberly Irving, an attorney. *Id*. Jay Steinbrenner, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*.

On August 6, 2018, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled. Tr. 20-32. On July 11, 2019, the Appeals Council denied Plaintiff's request for review. Tr. 1-5. The ALJ's August 6, 2018 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ

2

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her August 6, 2018 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016;

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of September 15, 2013 through her date last insured of December 31, 2016 (20 CFR 404.1571 *et seq*.);

3. Through the date last insured, the claimant had the following severe impairments: degenerative joint disease, status post right total knee replacement, anxiety disorder with panic attacks, depressive disorder, dysesthesia and myofacial muscle pain of the bilateral feet, small fiber neuropathy and obesity (20 CFR 404.1520(c));

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526);

5. Through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[1] except she can occasionally reach overhead bilaterally; occasionally balance, stoop, and climb ramps and stairs; never climb ladders, ropes, kneel, crouch, or crawl; occasionally requires the use of a cane to ambulate and balance; can never be exposed to temperature extremes; understand, remember, and carry out simple routine work; make simple workplace decisions; no work at a production rate pace; maintain attention and concentration for two-hour blocks of time; tolerate minimal changes in workplace processes and settings; and, occasional interaction with supervisors, coworkers, and the public;

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965);

7. The claimant was born on July 6, 1964 and was 49 years old, which is defined as a younger individual age 18-49, on the date last insured. The claimant subsequently changed age category to closely approaching advanced age and was 52 years old on the date last insured (20 CFR 404.1563);

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564);

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569and 404.1569(a));

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from September 15, 2013, the alleged onset date, through December 31, 2016, the date last insured (20 CFR 404.1520(g)).

Tr. 20-32.

Accordingly, the ALJ determined that, for a period of disability and disability insurance benefits filed on December 28, 2015, the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 32.

## ANALYSIS

Plaintiff asserts four points of error, two of which challenge the ALJ's consideration of the medical evidence pertaining to Plaintiff's mental impairments. Plaintiff argues that the ALJ made her decision without assigning controlling weight to any medical opinion assessing Plaintiff's mental health and did not properly consider an opinion from Plaintiff's psychiatric nurse practitioner. *See* ECF No. 8-1 at 1, 22-30. Plaintiff alleges that because the ALJ gave only some weight to every opinion, the ALJ's decision was not supported by substantial evidence. *See id.* Plaintiff also argues that the ALJ failed in her duty to develop the record because she allegedly did not obtain missing treatment records from Plaintiff's mental health providers. *See id.* at 19-22.

Finally, Plaintiff argues that the ALJ did not reconcile the VE's testimony with an alleged "discrepancy" in the Dictionary of Occupational Titles ("DOT"). *See id.* at 15-20. In this point,

Plaintiff takes issue with the ALJ's reliance on the VE's testimony to restrict Plaintiff to occasional overhead reaching in her hypothetical and her RFC assessment. *Id*. Plaintiff asserts that the DOT contradicted with this testimony because the DOT does not address overhead reaching. *Id*. The Court notes that Plaintiff asserts no other errors with respect to the ALJ's physical RFC finding. *See generally* ECF No. 8-1.

The Commissioner argues in response that the ALJ properly considered the medical opinion evidence, including the questionnaire completed by Plaintiff's psychiatric nurse practitioner. *See* ECF No. 10-1 at 16-25.  With respect to Plaintiff's argument that the ALJ failed to adequately develop the record and obtain additional medical evidence from her mental health providers, the Commissioner argues that Plaintiff's counsel repeatedly told the ALJ that no other records existed, and the ALJ, properly discharged her duty to develop the record. *See id*. at 25-28. Finally, the Commissioner argues that the ALJ properly relied on VE testimony to determine the vocational characteristics of the jobs Plaintiff could stillperform in spite of her limitations. *See id*. at 28-30

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ set forth a well-supported RFC finding. The ALJ appropriately weighed the medical evidence, including the

treatment notes, objective findings, and the medical opinions, and the ALJ's RFC determination was supported by substantial evidence.

The record reflects that Plaintiff received primary care treatment from Sharon M. Ehlers, NP ("Ms. Ehlers"), at Erickson Family Practice, from approximately December 2012 to approximately January 2016. Tr. 245-78. In December 2012 (prior to the relevant period which began September 15, 2013), Plaintiff reported she was "feeling well," but she was "under alot [sic] of stress" because she had recently divorced, her father had passed away, and her mother had fallen that morning. Tr. 246. Plaintiff reported her mood was "irritable and up and down," but Ms. Ehlers noted appropriate affect, clear and appropriate thought processes, and no thoughts of self-harm. Tr. 247-48. Plaintiff said she had anxiety at night, but she had run out of her mood-stabilizing medication. Tr. 248. Ms. Ehlers adjusted Plaintiff's psychiatric medication regimen. *Id*. The next month, Plaintiff was "feeling well," her psychiatric symptoms were "mostly well controlled" with medication, and Ms. Ehlers continued Plaintiff's psychiatric medications. Tr. 250-52.

September 25, 2013 was Plaintiff's first visit to see Ms. Ehlers during the relevant period. Tr. 256-58. Plaintiff told Ms. Ehlers she had worsened anxiety, depression, and irritability after she discontinued her mood-stabilizing medication. Tr. 256. Plaintiff said she was "still grieving for her mom." Tr. 257. Ms. Ehlers noted that Plaintiff had anxious and sad mood and appropriate and depressed affect, but she had clear and appropriate thought processes and no thoughts of self-harm. Tr. 257. Ms. Ehlers adjusted Plaintiff's psychiatric medication regimen. Tr. 257-58.

Two months later, Plaintiff's depression had improved with medication; she was "feeling well;" and her psychiatric symptoms were "mostly well controlled." Tr. 250, 259. Plaintiff had an improved and "okay" mood, appropriate affect, clear and appropriate thought processes, intact

cognition, and no thoughts of self-harm. Tr. 260. Ms. Ehlers increased the dosage of one of Plaintiff's antidepressant medications and continued her remaining medications. Tr. 260-61.

In May 2014, Plaintiff reported her psychological symptoms had not worsened during the previous six months. Tr. 262. Ms. Ehlers noted that Plaintiff's depression and anxiety were "stable," and she continued Plaintiff's psychiatric medications. Tr. 263-64. Five months later, Plaintiff saw Ms. Ehlers regarding a rash. Tr. 266. Plaintiff's depression was "better," and her anxiety was improved. Tr. 271.

On January 4, 2016, Plaintiff reported she was "overwhelmed" and "stressed about finances," her anxiety was "mildly worse," and she had decreased concentration. Tr. 276-77. She had anxious and "up and down" mood, but appropriate affect, clear and appropriate thought processes, intact cognition and memory, and no thoughts of self-harm. Tr. 277. Ms. Ehlers adjusted Plaintiff's psychiatric medications. Tr. 278.

In March 2016, Plaintiff began treatment with social worker Dawn Sainsbury, LCSW ("Ms. Sainsbury"), at Spectrum Human Services ("Spectrum"), for anxiety and depression. Tr. 330-72. Plaintiff said she had difficulty concentrating, became anxious in crowds, and had difficulty leaving the house. Tr. 330, 362, 365. Plaintiff's daily activities included cooking, listening to music, completing puzzles, playing "slots" on her computer, and coloring. Tr. 362. She cared for her grandchildren after school several times a week. Tr. 365. Ms. Sainsbury recommended outpatient counseling for Plaintiff's symptoms. Tr. 365, 368.

On April 26, 2016, Susan Santarpia, Ph.D. ("Dr. Santarpia"), performed a consultative psychological evaluation of Plaintiff. Tr. 319-22. Plaintiff reported she had a high-school education and two years of college classes. Tr. 319. She last worked for two weeks as a cashier in 2013. Tr. 319. Plaintiff's daily activities included cooking, cleaning, washing laundry, shopping,

driving, socializing with friends and family, gardening, listening to the radio, and performing personal care. Tr. 321.

Dr. Santarpia noted that Plaintiff had normal mood, full affect, cooperative demeanor, adequate social ability, fluent speech, coherent and goal-directed thought processes, intact attention and concentration, intact recent and remote memory, average cognitive functioning, and fair insight and judgment. Tr. 320-21. Dr. Santarpia diagnosed depression and anxiety, and she opined that Plaintiff had no limitations in her abilities to follow and understand simple instructions, perform simple tasks, maintain attention and concentration, maintain a regular schedule, learn new tasks, make appropriate decisions, relate adequately with others, and appropriately deal with stress. Tr. 322. Dr. Santarpia said that Plaintiff had mild impairment in her ability to perform complex tasks due to "lack of motivation" and recommended vocational training and rehabilitation. Tr. 322.

The same day, Hongbiao Liu, M.D. ("Dr. Liu"), performed a consultative physical examination of Plaintiff. Tr. 323-26.  Plaintiff reported she cooked six times per week, cleaned two to three times   per week, did laundry occasionally, shopping one to two times per month, and childcare one to two times per week. On examination, Plaintiff's gait was limping with and without using her cane; squat was five percent full due to low back pain; and she was able to rise from her chair with difficulty. Tr. 324. Dr. Liu opined that the cane was medically necessary to keep balance and limit pain. Tr. 324. Lumbar range of motion was reduced; straight leg raise testing was positive in the supine and sitting position; and shoulder and knee range of motion was reduced. Tr. 325. Dr. Liu opined that Plaintiff had moderate limitations for prolonged walking, bending, kneeling, and overhead reaching. Tr. 326.

On May 12, 2016, Plaintiff saw David Pfalzer, NPP ("Mr. Pfalzer"), at Spectrum, and reported she had increased anxiety and depression after her primary physician discontinued

prescribing her psychiatric medications. Tr. 375-97. Mr. Pfalzer noted that Plaintiff had dysphoric mood, restricted affect, normal thought content and thought processes, normal perception, normal cognition, and fair insight and judgment. Tr. 387-88. Mr. Pfalzer diagnosed Plaintiff with anxiety, post-traumatic stress disorder ("PTSD"), polysubstance abuse in remission, and possible depression and bipolar disorder. Tr. 373. He prescribed antidepressant and anti-anxiety medications and recommended that Plaintiff continue outpatient psychological treatment. Tr. 373, 376.

From May through December 2016, Plaintiff worked with counselors at Spectrum to improve "positive thinking skills," improve her social relationships with others, and "promote an increased sense of hopefulness." Tr. 487-90, 517-21. On June 30, 2016, counselor Tristin Ramsay, LMHC ("Mr. Ramsay") observed that Plaintiff was making progress toward these goals and objectives. Tr. 510.Plaintiff was able to cook, attend farmer's markets and concerts, take walks, and perform personal care. Tr. 489-90.

On May 20, 2016, A. Dipeolu, Ph.D. ("Dr. Dipeolu"), reviewed Plaintiff's medical treatment records and opined that Plaintiff's psychological symptoms did not cause any significant impairment in her activities of daily living, social functioning, or concentration, persistence, or pace. Tr. 89-90. Dr. Dipeolu determined that Plaintiff's psychological impairment was non-severe. *Id*.

In June 2016, Plaintiff established primary care with Kathleen Barone, FNP-C ("Ms. Barone"), and Luis Melgar, M.D. ("Dr. Melgar"). Tr. 602. Plaintiff said she felt "well," but she reported some anxiety and depression. *Id*. Ms. Barone observed that Plaintiff had normal mood and affect and cooperative attitude and instructed Plaintiff to continue psychological care. Tr. 604. The next month, Plaintiff followed up with Ms. Barone and Dr. Melgar regarding numbness,

tingling, and pain in her feet. Tr. 612. Plaintiff was pleasant and cooperative with clear speech. Tr. 613. In September 2016, Plaintiff told Ms. Barone she was "feeling well." Tr. 614. Ms. Barone observed that Plaintiff's mood and affect were normal. Tr. 615, 617.

Later that month, Plaintiff consulted Luisa Rojas, M.D. ("Dr. Rojas"), at DENT Neurologic Institute ("DENT"), regarding pain in her feet. Tr. 593. Dr. Rojas observed that Plaintiff had normal attention and concentration, well-maintained memory, good fund of knowledge, and normal speech. Tr. 594.

On October 11, 2016, Plaintiff followed up with Ms. Barone. Tr. 621. Plaintiff felt "well," but she reported some depression and anxiety. *Id*. Ms. Barone observed that Plaintiff had normal mood and affect, cooperative attitude, and clear speech. Tr. 622-23. Ms. Barone recommended that Plaintiff continue psychological care. Tr. 623.

Subsequent to the expiration of Plaintiff's insured status (which ended on December 31, 2016), medical providers treated Plaintiff for a skin infection, a scalp cyst, and anxiety. Tr. 470, 485-523, 625-48. On April 10, 2017, Plaintiff followed up with Ms. Barone, reporting that she continued to see Mr. Pfalzer, every month, and a counselor every two weeks. Tr. 625. She reported continued left knee pain, chronic neck and back pain, bilateral foot pain, and anxiety and depression. Tr. 625. Ms. Barone observed that Plaintiff had normal mood and affect, cooperative attitude, and clear speech. Tr. 626-27. Depression screening revealed major depression, moderately severe. Tr. 631-32. Katie Hare, PA-C ("Ms. Hare"), Dr. Melgar, and other providers observed that Plaintiff had normal mood and affect, cooperative attitude, and clear speech. Tr. 470, 626-27, 648.

Plaintiff entered Mercy Hospital with chest pain and anxiety on October 16, 2017. Tr. 449-69. Associated symptoms included chest tightness, shortness of breath, nausea, and vomiting. Tr.

11

450. An EKG was normal, but Plaintiff was admitted for observation. Tr. 451. The following day, a stress test was normal. Tr. 456. Plaintiff was noted to appear anxious on examination. Tr. 459. Aravind Herle, M.D. ("Dr. Herle"), attributed Plaintiff's symptoms to gastrointestinal issues "with likely psychological overlay." Tr. 462. She was discharged and started on Lisinopril, simvastatin, and atenolol. Tr. 465-66.

Thereafter, Plaintiff was followed by Kathleen Ziomek, FNP-C ("Ms. Ziomek"), in Dr. Melgar's office. Tr. 473-81. Plaintiff reported she had a "set back" with her mental health, and her anxiety had "recently" increased. Tr. 457, 476, 487. On October 17, 2017, and November 8, 2017, Ms. Ziomek observed that Plaintiff had normal mood and affect. Tr. 475, 478.

Plaintiff reported feeling "ok" at a session with Mr. Ramsay at Spectrum on April 12, 2018. Tr. 513, 515. On examination, mood was good and anxious with appropriate affect. Tr. 515. Plaintiff's symptoms improved with treatment, and by April 2018 she no longer needed psychological care "due to completing objectives." Tr. 523. However, it was noted that Plaintiff would benefit from continued 1:1 counseling and medication management. Tr. 522.

On April 16, 2018, Ms. Ziomek completed a questionnaire regarding Plaintiff's physical capacity. Tr. 525-29. Ms. Ziomek opined that Plaintiff had anxiety and panic attacks that "[f]requently" and "[c]onstantly" interfered with her attention and concentration and would prevent her from performing even "low stress" jobs. Tr. 525-26. She reported that Plaintiff could not sit, stand, or walk even 2 hours of an 8-hour period, could only occasionally lift less than 10 pounds and never lift 10 pounds or more, and needed to elevate her legs 80% to 100% of the time. Tr. 526-27. Ms. Ziomek said that Plaintiff had no significant limitations in reaching, but she also said that Plaintiff could never hold her head in a static position, crouch, squat, or climb ladders;

could rarely look up and climb stairs; could only occasionally look down, turn her head, twist, and stoop; and would be absent from work at least four days per month. Tr. 528.

On May 1, 2018, Mr. Pfalzer completed a questionnaire regarding Plaintiff's psychological functioning. Tr. 531-35. He opined that Plaintiff had serious limitations in nearly every category of functioning, including her abilities to remember work-like procedures, understand, remember, and carry out both simple and detailed instructions, maintain attention for two-hour segments, maintain regular attendance, sustain an ordinary routine, work in coordination or proximity to others, complete a normal workday and workweek, perform at a consistent pace, respond appropriately to supervisors, get along with coworkers, respond appropriately to routine work change. s, deal with normal work stress, travel in unfamiliar places, and use public transportation. Tr. 533-34. Mr. Pfalzer stated that Plaintiff had limited but "satisfactory" abilities to interact with the general public, maintain socially appropriate behavior, maintain basic cleanliness, make simple work-related decisions, ask simple questions, and be aware of normal hazards. Tr. 533-34. He opined that Plaintiff would be absent from work more than four days per month and could not engage in full-time employment. Tr. 535.

Upon careful review of the record, the Court finds that the ALJ granted appropriate weight to the opined limitations that were supported by the record, and the RFC assessed by the ALJ was supported by substantial evidence. A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner).

Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.). Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588.

Plaintiff argues the ALJ failed to properly weigh the medical opinions of record. *See* ECF No. 8-1 at 22-30. Specifically, Plaintiff argues that the ALJ should have given more weight to the questionnaire completed by Mr. Pfalzer in May 2018, 15 months after Plaintiff's insured status

expired. *See id*. Plaintiff complains that the ALJ gave "some" weight to both Mr. Pfalzer's retrospective opinion and Dr. Santarpia's consultative examination. *See id*. at 23-24 (citing Tr. 28, 29). However, the ALJ clearly explained her reasons for the weight assigned to each opinion.

Contrary to Plaintiff's argument, it was within the ALJ's discretion to compare and contrast the various medical opinions, along with all the other relevant evidence, to resolve any conflicts in the evidence and determine Plaintiff's RFC. *See Veino*, 312 F.3d at 588; *Schaal*, 134 F.3d at 504. In doing so, "the ALJ [was] not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007)). Furthermore, the ALJ may formulate an RFC without a medical source statement or formal medical opinion. *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017).

The ALJ also was not required to wholesale adopt any medical opinion. *See O'Neil v. Colvin*, No. 13-cv-575, 2014 WL 5500662, *6 (W.D.N.Y. Oct. 30, 2014) ("the ALJ's RFC finding need not track any one medical opinion"); *Matta v. Astrue*, 508 F.App'x at 56 (ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision"). It was the ALJ's duty to review the evidence taken as a whole, resolve any inconsistencies, and formulate a RFC finding that reflects Plaintiff's credible limitations. *See* 20 C.F.R. §§ 404.1529, 404.1545, 404.1546, 416.929, 416.945, and 416.946; *see also Carney v. Berryhill*, No. 16-cv-269, 2017 WL 2021529, *4 (W.D.N.Y. May 12, 2017).

Additionally, where, "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity," a medical source statement or formal medical opinion is not necessarily required.). *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x. 29, 34 (2d Cir. 2013) (citing *Lowry v. Astrue*, 474 F. App'x 801, 804 (2d Cir. 2012)); *Pellam v. Astrue*, 508 F.

App'x. 87, 90 (2d Cir. 2013) (upholding ALJ's RFC determination where he "rejected" physician's opinion but relied on physician's findings and treatment notes). The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ. *See Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009); *see also Burgess*, 537 F.3d at 128. Plaintiff has failed to meet this burden.

As the ALJ explained, she assigned some weight to Dr. Santarpia's opinion because it was based on a thorough examination, and Dr. Santarpia is an acceptable medical source with knowledge of the Social Security program. Tr. 28. In weighing a medical source opinion, "the amount of understanding of [the agency's] disability programs and their evidentiary requirements that an acceptable medical source ha[d], regardless of the source of that understanding" was a factor an ALJ should consider. 20 C.F.R. § 416.927(c)(6) (2016). "State agency medical and psychological consultants . . . [were] highly qualified physicians, psychologists, and other medical specialists who [were] also experts in Social Security disability evaluation." 20 C.F.R. § 416.927(e)(2)(i) (2016). However, the ALJ also noted that treatment notes in the record indicated that Plaintiff's symptoms were more severe than Dr. Santarpia determined. Tr. 28. Particularly, the ALJ referenced and relied upon Plaintiff's mental health treatment notes from Spectrum (Tr. 483-523) to limit Plaintiff to simple work. Tr. 28.

With respect to Mr. Pfalzer's opinion, the ALJ explained that she gave the opinion some weight because of Mr. Pfalzer's specialty and his long-term treatment relationship with Plaintiff. Tr. 29. However, she also noted the fact that Plaintiff was released from treatment in April 2018 due to completion of treatment goals, indicating that Plaintiff was not as limited as Mr. Pfalzer specified in his opinion. Tr. 29, 523. An ALJ may properly discount the opinion of a treating physician when the opinion is internally inconsistent or inconsistent with other evidence. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *see also Domm v. Colvin*, 579 F.App'x 27,

28 (2d Cir. Sept. 23, 2014) (summary order); *Micheli v. Astrue*, 501 F.App'x 26, 28-29 (2d Cir. Oct. 25, 2012) (summary order); *see also Burguess v. Berryhill*, No. 17-CV-6204L, 2018 WL 3569933, at *4 (W.D.N.Y. July 25, 2018) (ALJ properly discounted physician's opinions that were inconsistent with treatment records, objective testing, and history of conservative treatment).

Although Plaintiff references the "treating physician rule" in her argument (*see* ECF No. 8-1 at 27-29), this rule does not apply to Mr. Pfalzer. Mr. Pfalzer was an "other medical source," which is distinguished from acceptable medical sources like doctors and psychologists. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (non-physician medical professionals like nurse practitioners and counselors are "other" medical sources to be distinguished from "acceptable" medical sources like physicians); SSR 06-3p, 2006 WL 2329939 (S.S.A.).[2] "[W]hile the ALJ is certainly free to consider the opinion of [non-acceptable medical sources] in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. Nov. 5, 2008) (citing *Mongeur v. Heckler*, 722 F.2d at1039 n.2). An ALJ is "free to discount the assessments [of such sources] accordingly in favor of the objective findings of other medical doctors"); *see Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) ("[T]he ALJ is empowered with the discretion to afford less than controlling weight, or even no weight, to the opinion of 'other sources,'" as long as she "address[es] and discuss[es] the opinion").

Here, the ALJ properly addressed and discussed Mr. Pfalzer's opinion, and as noted above, gave the opinion some weight. Tr. 29. The ALJ noted that she relied on this opinion to limit

---

[2] The Commissioner has recently updated regulations pertaining to medical evidence, which included rescinding several Social Security Rulings, including 06-3p and 96-2p, effective March 27, 2017. *See* 82 Fed. Reg. 16,869 (April 6, 2017) (clarifying effective date of rescission notice published at 82 Fed. Reg. 15,263 (March 27, 2017)). However, because those changes are in effect only for cases filed after that date, they do not apply to this case.

Plaintiff to "understand, remember, and carry out simple routine work, make simple workplace decisions, never work at a production rate pace, maintain attention and concentration for two-hour blocks of time, tolerate minimal changes in workplace processes and settings, and occasionally interact with supervisors, coworkers, and the public." Tr. 29-30. However, the ALJ discounted Mr. Pfalzer's opinion because his statements that Plaintiff had significant limitations in almost every aspect of her ability to function throughout the relevant period were contradicted by substantial medical evidence in the record, including the opinions of Dr. Santarpia, Dr. Dipeolu, and the multiple medical providers that observed that Plaintiff's mood, thought processes, and cognition were stable and normal during the relevant period. *See, e.g.*, Tr. 89-90, 260, 263-64, 322, 604, 615, 617, 622-23.

Contrary to Plaintiff's claim, the ALJ's decision was supported by substantial evidence. Consistent with the ALJ's RFC determination, Dr. Santarpia opined that Plaintiff retained the ability to perform simple tasks and maintain attention and concentration sufficient to work. Tr. 322. Dr. Dipeolu similarly opined that Plaintiff had no significant mental limitations. Tr. 89-90. Throughout the relevant period, Plaintiff's medical providers observed that her anxiety and depression were improved with medication, and as noted above, providers regularly opined that Plaintiff's mood, thought processes, and cognition were stable and normal. Plaintiff reported some worsened anxiety and depression in September 2013 when she was "grieving for her mom" and had discontinued her psychiatric medications (Tr. 256-67), but her symptoms improved and were "mostly well controlled" after she resumed her medications (Tr. 250, 259). Plaintiff's symptoms then remained improved and "better" for more than a year. Tr. 262-64, 271.

In January 2016, Plaintiff reported a period of mildly increased anxiety when she was "overwhelmed" and "stressed about finances," but situational anxiety is not disabling. Tr. 276-77.

*See Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010); *Tindell v. Barnhart*, 444 F.3d 1002, 1006-07 (8th Cir. 2006); *see also Morgan v. Colvin*, No. 6:14-CV-0549 (LEK), 2016 WL 3527906, at *15 (N.D.N.Y. June 23, 2016); *Gonzalez v. Comm'r of Soc. Sec.*, No. 6:07-CV-629, 2010 WL 55933, at *5 (N.D.N.Y. Jan. 5, 2010). Plaintiff initiated mental health treatment, and by April 2016 her mood was normal. Tr. 320-21.

Plaintiff also reported an episode of increased anxiety and depression in May 2016 after she discontinued her medications (Tr. 387-88), but her symptoms improved by June 2016 when she resumed her medications, and her symptoms were normal throughout the remainder of the relevant period (Tr. 604, 615, 617, 622-23). Even after Plaintiff's insured status expired in December 2016, Ms. Hare, Dr. Melgar, and other providers continued to observe that Plaintiff had normal mood and affect, cooperative attitude, and clear speech. Tr. 470, 626-27, 648. Plaintiff testified that she was unable to be around "large groups of people" (Tr. 45), but she told her counselors that she was able to go on walks and attend farmer's markets and concerts (Tr. 489-90). Accordingly, the ALJ limited Plaintiff to no more than occasional interaction with supervisors, coworkers, and the public. Tr. 25.

As noted above, it was Plaintiff's burden to produce evidence proving her RFC and disability, which she has failed to do. *See Burgess v. Astrue*, 537 F.3d at 128. Because Plaintiff has presented no medical evidence of functional limitations greater than those found by the ALJ, she has failed to meet her burden to demonstrate that she had a more restrictive RFC than found by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (unpublished summary order) (Plaintiff "had a duty to prove a more restrictive RFC, and failed to do so"); *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

Furthermore, any error in the ALJ's RFC determination was harmless. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (holding that agency reconsideration is not required when, in the absence of error, the record would still dictate the same conclusion); *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." (citations omitted)). "Where an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand." *Baker o/b/o Baker v. Berryhill*, 2018 WL 1173782, *2 (W.D.N.Y. 2018); *see also Catalfamo v. Berryhill*, 2019 WL 1128838, *2 (W.D.N.Y. 2019) (rejecting argument that ALJ erred by "impos[ing] more restrictions than th[e medical] opinions suggested were necessary"); *Glab v. Comm'r of Soc. Sec.*, 2018 WL 3422062, *3 (W.D.N.Y. 2018) ("[t]he fact that the ALJ's RFC conclusion was more restrictive in some aspects than [a physician's] opinion . . . does not establish that the ALJ was relying on his own lay opinion").

Plaintiff also argues that the ALJ had a duty to develop the record and obtain additional medical evidence from her psychological treatment providers. *See* ECF No. 8-1 at 19-22. However, the record reflects that Plaintiff's counsel repeatedly told the ALJ that no other records existed, and Plaintiff has made no attempt to comply with the 5-day rule.[3] Prior to Plaintiff's August 2018 hearing, the agency reminded Plaintiff in June 2016, December 2017, and March 2018 that she

---

[3] In 2016, the agency revised 20 C.F.R. § 404.935, to require claimants to (a) make every reasonable effort to ensure that the ALJ receives all evidence, as required by 20 C.F.R. § 404.1512, and (b) inform the agency about or submit any written evidence, "no later than 5 business days before the date of the scheduled hearing." 20 C.F.R. § 404.935(a) (the "5-day rule"); Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process, 81 Fed. Reg. 90987-90997 (Dec. 16, 2016). If the claimant misses this 5-day deadline, the ALJ will later accept the evidence if the ALJ has not yet issued a decision and the claimant demonstrates that he or she did not previously submit the evidence because: (1) the agency misled the claimant; (2) the claimant had a physical, mental, educational, or linguistic limitation that prevented them from timely submitting or informing the agency; or (3) an unusual, unexpected, or unavoidable circumstance beyond the claimant's control prevented them from timely submitting or informing the agency about the evidence. *See* 20 C.F.R. § 404.935(b).

had an obligation to both (1) submit all relevant medical records in her possession, and (2) inform the ALJ of any evidence that was missing from the record. Tr. 76, 106, 123, 130. In May 2018, Plaintiff's counsel submitted a pre-hearing memorandum and represented that she had "requested all known treatment records, and upon information and belief, all known relevant records ha[d] been received and submitted" to the ALJ. Tr. 242.

At Plaintiff's hearing, the ALJ explicitly asked Plaintiff's counsel if the record contained all applicable medical records, to which Plaintiff's counsel responded in the affirmative (Tr. 39) and did not object to the scope of the record before the ALJ (Tr. 40). Furthermore, after the ALJ again inquired about the scope of the record later in the hearing, specifically questioning whether there might be a "gap" in Plaintiff's psychological treatment history and records, Plaintiff's counsel stated that "there was no gap" and represented that Plaintiff's mental health treatment records were "all contained in the Spectrum records." Tr. 49, 59. Although Plaintiff represents that psychological treatment records are missing, the record establishes that the ALJ diligently and repeatedly inquired about whether treatment documents might be missing from the record. Plaintiff, on the other hand, has made no effort to comply with the 5-day rule. Thus, the ALJ properly discharged her duty to develop the record. *See Melton v. Colvin*, 13-CV-6188 MAT, 2014 WL 1686827, at *8 (W.D.N.Y. Apr. 29, 2014); *see also Brown v. Colvin*, 3:14-CV-1784(WIG), 2016 WL 2944151, at *3 (D. Conn. May 20, 2016).

Moreover, even if the record does not contain notes from every therapy visit, a sufficient record of Plaintiff's mental health treatment was before the ALJ. As discussed above, there is ample medical evidence supporting the ALJ's decision, including numerous treatment records from Plaintiff's providers at Spectrum (Tr. 483-523), as well as the consulting opinions of Dr. Santarpia and Dr. Dipeolu (Tr. 89-90, 319-22), and the multiple other medical providers that

observed that Plaintiff's mood, thought processes, and cognition were stable and normal during the relevant period (Tr. 260, 263-64, 604, 615, 617, 622-23). *See Brogan-Dawley v. Astrue*, 484 F. App'x 632, 634 (summary order) (2d Cir. 2012) (holding that the ALJ was not required to further develop the record when the available evidence was adequate to determine that the claimant was not disabled); *Johnson v. Colvin*, 669 F. App'x at 46 (explaining that "because the record contained sufficient other evidence supporting the ALJ's determination and because the ALJ weighed all of that evidence when making his residual functional capacity finding, there was no 'gap' in the record and the ALJ did not rely on his own 'lay opinion'"); *see also Jones v. Colvin*, No. 13-CV-06443, 2014 WL 2560593, at *5 (W.D.N.Y. June 6, 2014) (acknowledging that while the Agency has a duty to develop the record, that duty is not limitless).

An ALJ need not further develop the record "when the evidence already presented is 'adequate for [the ALJ] to make a determination as to disability.'" *See Janes v. Berryhill*, 710 F.App'x 33, 34 (2d Cir. Jan. 30, 2018) (summary order (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996). Here, the record is clear and contains sufficient evidence to provide a useful assessment of Plaintiff's mental limitations. *Benman v. Comm'r of Social Security*, 350 F. Supp. 3d at 259-60. Thus, Plaintiff's argument that the ALJ failed in his duty to develop the record is meritless. *See Morris v. Berryhill*, 721 F. App'x 25, 27-28 (2d Cir. 2018) (summary order) (explaining that the mere "theoretical possibility" of missing records that might be probative of disability "does not establish that the ALJ failed to develop a complete record"). Accordingly, Plaintiff's argument fails, and the Court finds no error.

In her final point, Plaintiff argues that remand is required because the ALJ did not reconcile discrepancies between the VE's testimony and the DOT. *See* ECF No. 8-1 at 15-20. After weighing all of Plaintiff's relevant medical and other evidence, the ALJ determined that Plaintiff could only

perform a limited range of light work. Tr. 25-30. *See* 20 C.F.R. §§ 404.1527(d)(2), 404.1545(a)(3), 404.1546(c). Among other physical limitations, the ALJ determined that Plaintiff could only occasionally reach overhead, but the ALJ found that Plaintiff had no limitations in her ability to reach in other directions. Tr. 25. Plaintiff argues that the VE's testimony regarding Plaintiff's ability to perform the requirements of three jobs contradicted the DOT with regard to reaching. *See* ECF No. 8-1 at 15-20. Plaintiff's argument is incorrect.

"DOT definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010) (internal quotation omitted). The DOT cautions that its descriptions "may not coincide in every aspect with the content of jobs as performed in particular establishments or at certain localities." DOT at xiii. The generic nature of the DOT's job descriptions may require, as in this case, the testimony of a VE to determine whether an individual can perform a particular job. *See* SSR 00-4p. The fact that a VE's testimony may not coincide with the DOT does not invalidate the VE's testimony. Instead, the ALJ must merely "elicit a reasonable explanation for the conflict." *Id*.

Here, based on the ALJ's questioning, the VE testified that even if Plaintiff had limited ability to reach overhead, she could nevertheless perform a number of electronics sub-assembler, small product assembler, and mail room clerk jobs that existed in the national economy. Tr. 68-70. The VE further testified that his testimony did not conflict with the DOT. Tr. 71. Thus, it was proper for the ALJ to rely upon the VE's testimony regarding the vocational characteristics of jobs, and there was no conflict. *See Diakogiannis v. Astrue*, 975 F. Supp. 2d 299, 319 (W.D.N.Y. 2013) (finding no conflict between the VE's testimony and the DOT when the VE testified that overhead

23

reaching was not contained in the DOT); *see also McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); *Claymore v. Astrue*, 519 F. App'x 36, 38-39 (2d Cir. 2013).

While Plaintiff may disagree with the ALJ's conclusion, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, No. 16-02672, 2018 WL 459678, at *3 (2d Cir. Jan. 18, 2018) (internal citations and quotations omitted). That is not the case here. The ALJ appropriately assessed the medical evidence and Plaintiff's testimony regarding his function abilities to formulate Plaintiff's RFC.

For all these reasons, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole. Therefore, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 10) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE